WAYNE C. ARNOLD, State Bar No. 103194
PAYTON E. GAROFALO, State Bar No. 274135
LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Blvd., Suite 800
Beverly Hills, California 90210
Telephone: (310) 274-8700
Facsimile: (310) 274-2798
warnold@lurie-zepeda.com
pgarofalo@lurie-zepeda.com

JACK R. CREWS, Texas SBN 05072300 (*Pro Hac Vice Application Pending*)
BAIRD, CREWS, SCHILLER & WHITAKER, P.C.
15 North Main Street
Temple, TX 76501-7629
Telephone: (254) 743-7320
Fax: (254) 774-9353
jackcrews@bcswlaw.com

MICHAEL G. COSBY, Texas SBN 04847500 (*Pro Hac Vice Application Pending*)
PAKIS, GIOTES, PAGE & BURLESON, P.C.
400 Austin Avenue, Suite 400
Waco, TX 76701
Telephone: (254) 297-7300
Fax: (254) 297-7301
cosby@pakislaw.com

Attorneys for Defendant TOM R. THOMPSON
DBA THOMPSON TRUCKING

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210-5533

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM KHOLI ENTERPRISES, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TOM R. THOMPSON, individually and dba THOMPSON TRUCKING; JONES MOTOR COMPANY, INC. a Pennsylvania corporation qualified to transact intrastate business in the State of | Civil Case No. '11CV0177 W JMA<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION (28 U.S.C. §§ 1332(A), 1441, AND 1446)**<br><br>(San Diego County Superior Court Case No. 37-2010-00106420 CU-FR-CTL) |

California; JONES MOTOR GROUP, INC. a subsidiary of JONES MOTOR COMPANY, INC.; and JONES EXPRESS, INC., a subsidiary of JONES EXPRESS COMPANY, INC. and DOES 1 through 50, inclusive,

Defendants.

**TO THE HONORABLE JUDGE OF SAID COURT**:

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Tom R. Thompson dba Thompson Trucking ("Thompson"), hereby files this Notice of Removal, and in support thereof states as follows:

1.

The Plaintiff, Sam Kholi Enterprises, Inc., commenced this action against Thompson on December 20, 2010 in the Superior Court of the State of California, County of San Diego – Central Division, Case Number 37-2010-00106420-CU-FR-CTL (hereinafter the "state court action"). *See* Complaint, attached hereto and incorporated by reference as Exhibit "A". In the state court action, Plaintiff alleges causes of action for intentional interference with contractual relations, intentional interference with prospective business advantage, fraud in the inducement, intentional misrepresentation, fraud – forgery, civil conspiracy, and asks for declaratory relief.

2.

The amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3.

Plaintiff is a California corporation with its principal place of business in San Diego County. Tom R. Thompson is an individual domiciled in Coryell County, Texas. Thompson Trucking is a sole proprietorship that conducted business in Coryell County, Texas prior to its status expiring in March 2010. Accordingly, neither Tom R. Thompson nor Thompson trucking is a citizen of the State of

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210-5533

California. *See* 28 U.S.C. § 1332(c). Upon information and belief, none of the other named defendants are citizens of the State of California.

4.

This Court has diversity jurisdiction over the state court action pursuant to 28 U.S.C. § 1332(a)(1) and (b), in as much as the matter in controversy exceeds the sum or value of $75,000, exclusive of cost and interest, and it is between citizens of different states. Accordingly, the state court action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

5.

Pursuant to 28 U.S.C. § 1446, Defendants Jones Motor Company, Inc., Jones Motor Group, Inc., Jones Express, Inc., and Jones Express Company, Inc., by and through their attorney of record, consent to and join in the removal of this action to district court. It is sufficient for the removing defendant to represent to the court in its filing that the other defendants have given their consent. *Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (sufficient that at least one attorney of record sign the notice and certify that the remaining defendants consent to removal).

6.

Defendants Does 1 through 50 are disregarded for removal purposes. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998). Plaintiff's complaint fails to describe said defendants with sufficient particularity to prevent any real question as to their identities.

7.

Copies of all pleadings filed in this case in the state district court are attached hereto as Exhibit "A".

8.

Thompson will properly give written notice to Plaintiff, and file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California,

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210-5533

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210-5533

County of San Diego – Central Division, pursuant to 28 U.S.C. § 1446(d).

Dated: January 27, 2011

Respectfully submitted,

LURIE, ZEPEDA, SCHMALZ & HOGAN
PAYTON E. GAROFALO

BAIRD, CREWS, SCHILLER & WHITAKER, P.C.
JACK R. CREWS

PAKIS, GIOTES, PAGE & BURLESON, P.C.
MICHAEL G. COSBY

By: Payton Garofalo
Payton E. Garofalo
Attorneys for Defendant TOM R. THOMPSON DBA THOMPSON TRUCKING

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **DEFENDANT'S NOTICE OF REMOVAL OF ACTION (28 U.S.C. §§ 1332(a), 1441(b), and 1446)** was on **January 27, 2011**, served upon all counsel of record by placing a copy of the same in the United States Mail, postage prepaid, and sent to their last known address as follows:

**Amelia A. McDermott**
**Law Offices of Amelia A. McDermott**
**4626 Albuquerque St.**
**San Diego, CA 92109**
**Facsimile: (858) 866-2657**

***Attorneys for Plaintiff SAM KHOLI ENTERPRISES, INC,***

Executed on **January 27, 2010**, at **Beverly Hills, California**.

Payton Garofalo
Payton E. Garofalo
Attorneys for Defendant TOM R. THOMPSON
DBA THOMPSON TRUCKING

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210-5533

# EXHIBIT A

OFFICE 12 DIVISION

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

2010 DEC 21 A 9 54

SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

SEE ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

SAM KHOLI ENTERPRISES, INC., a California Corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
County of San Diego, Central Judicial District
330 West Broadway, San Diego, California 92101

CASE NUMBER:
*(Número del Caso):*
37-2010-00106420-CU-FR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Amelia A. McDermott, Law Offices of Amelia A. McDermott, 4626 Albuquerque St., San Diego, CA 92109

DATE: December 21, 2010
*(Fecha)*

Clerk, by *(Secretario)* T. Lusch , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Jason R. Thompson individually and dba Thompson's Painting

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify)*: Business Entity Form Unknown

4. ☐ by personal delivery on *(date)*:

| SHORT TITLE: Sam Kholi Enterprises, Inc. v. Tom R. Thompson, et al. | SUM-200(A) CASE NUMBER: |
|---|---|

INSTRUCTIONS FOR USE

- This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
- If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

TOM R. THOMPSON, individually and dba THOMPSON TRUCKING; JONES MOTOR COMPANY, INC., a Pennsylvania corporation qualified to transact intrastate business in the State of California; JONES MOTOR GROUP, Inc., a subsidiary of JONES MOTOR COMPANY, INC.; and JONES EXPRESS, INC., a subsidiary of JONES MOTOR COMPANY,INC., and DOES 1 through 50, inclusive



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Amelia A. McDermott (SBN 204997)
LAW OFFICES OF AMELIA A. McDERMOTT
4626 Albuquerque Street
San Diego, California 92109
TELEPHONE NO.: 858-866-2600 FAX NO.: 858-866-2657
ATTORNEY FOR (Name): plaintiff Sam Kholi Enterprises, Inc.

FOR COURT USE ONLY

[stamp:] ... OFFICE 12
2010 DEC 21 A 9:54
... SUPERIOR COURT
... CO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Central Judicial District

CASE NAME:

## CIVIL CASE COVER SHEET

[✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2010-00106420-CU-FR-CTL
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [✓] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a.[✓] monetary b.[✓] nonmonetary; declaratory or injunctive relief c.[✓] punitive
4. Number of causes of action *(specify)*: seven (7)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 20, 2010
Amelia A. McDermott
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central
TELEPHONE NUMBER: (619) 450-7061

PLAINTIFF(S) / PETITIONER(S): Sam Kholi Enterprises Inc

DEFENDANT(S) / RESPONDENT(S): Tom R Thompson et.al.

SAM KHOLI ENTERPRISES INC VS. THOMPSON

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2010-00106420-CU-FR-CTL |
|---|---|

Judge: John S. Meyer

Department: C-61

COMPLAINT/PETITION FILED: 12/21/2010

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (SDSC Local Rule 2.1.7)

CASE MANAGEMENT CONFERENCE: A Case Management Conference will be set within 150 days of filing the complaint.

ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION. IF THE CASE IS ORDERED TO ARBITRATION PURSUANT TO CODE CIV. PROC. 1411.11, THE COSTS OF ARBITRATION WILL BE PAID BY THE COURT PURSUANT TO CODE CIV. PROC. 1141.28.

FOR MORE INFORMATION, SEE THE ATTACHED ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2010-00106420-CU-FR-CTL CASE TITLE: Sam Kholi Enterprises Inc vs. Thompson

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
**(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
**(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
**(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):

- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | FOR COURT USE ONLY |
| PLAINTIFF(S): Sam Kholi Enterprises Inc | |
| DEFENDANT(S): Tom R Thompson DBA Thompson Trucking et.al. | |
| SHORT TITLE: SAM KHOLI ENTERPRISES INC VS. THOMPSON | |
| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2010-00106420-CU-FR-CTL |

Judge: John S. Meyer

Department: C-61

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

- ☐ Mediation (court-connected)
- ☐ Mediation (private)
- ☐ Voluntary settlement conference (private)
- ☐ Neutral evaluation (private)
- ☐ Other (*specify e.g., private mini-trial, private judge, etc.*): ____________
- ☐ Non-binding private arbitration
- ☐ Binding private arbitration
- ☐ Non-binding judicial arbitration (discovery until 15 days before trial)
- ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (*Name*) ____________

Alternate neutral (for court Civil Mediation Program and arbitration only): ____________

Date: ____________

Date: ____________

Name of Plaintiff

Name of Defendant

Signature

Signature

Name of Plaintiff's Attorney

Name of Defendant's Attorney

Signature

Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

IT IS SO ORDERED.

Dated: 12/21/2010

JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)

STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION

8CH1B20 12/30/10

**First Legal | Support Services**

| | | |
|---|---|---|
| Los Angeles | (213) 250-1111 | Fax (213) 250-1197 |
| Direct line to legal | (213) 250-9111 | Fax (213) 250-1197 |
| Los Angeles (West) | (310) 277-9111 | Fax (310) 277-9153 |
| Direct line to legal | (310) 277-7101 | Fax (310) 277-9153 |
| Inland Empire | (951) 779-1110 | Fax (951) 779-0100 |
| San Diego | (619) 231-9111 | Fax (619) 231-1361 |
| San Francisco | (415) 626-3111 | Fax (415) 626-1331 |
| Santa Ana | (714) 541-1110 | Fax (714) 541-8182 |
| Sacramento | (916) 444-5111 | Fax (916) 443-3111 |
| Las Vegas | (702) 671-4002 | Fax (702) 386-0768 |
| Phoenix | (602) 248-9700 | Fax (602) 248-9727 |

**FIRM NAME:** FIRST LEGAL SUPPORT
1111 6TH AVE. STE. 204
SAN DIEGO, CA. 92101

**PHONE #:** (619) 231-9111 x 1541
**FAX #:** (619) 231-1361

**CONTACT:** JESSICA AGUIRRE
jaguirre@firstlegalsupport.com

ort.com

CONTROL NO. 714613 DATE: 12/22/10

COURT: California Superior Court, San Diego, Central

DOCUMENTS: Notice of Case Assignment, Alternative Dispute Resolution Information, Civil Case Cover Sheet, Summons, and Complaint

ADVANCE WITNESS FEES ☐ YES ☐ NO

CASE NO: 37-2010-00106420-CU-FR-CTL

LAST DAY TO SERVE January 21, 2011

Short title of case: Sam Kholi v. Jones Motor Co., Inc., et al.

HEARING SET FOR: ________ AT ________ DEPT/DIV ________

SERVE: TOM THOMPSON, individually and dba THOMPSON TRUCKING

(PLEASE INDICATE NAME EXACTLY AS IT SHOULD APPEAR ON PROOF OF SERVICE)

TYPE OF SERVICE
☑ PERSONAL ONLY
☑ SUBSTITUTED OK
☐ DELIVER / DROP SERVE

RESIDENCE ADDRESS:
497 Summers Road
Copperas Cove, Texas 76522

TELEPHONE #.

BUSINESS ADDRESS:
Thompson Trucking
206 South 8th Street
Copperas Cove, Texas 76522

TELEPHONE #: (254) 542-7101

HOURS WORKED

LEVEL OF SERVICE
☐ SPECIAL
☐ ASAP (Same Day)
☐ RUSH (Next Business Day)
☑ REGULAR

SPECIAL INSTRUCTIONS:
Attempt the business address first. Thank You!

WITNESS FEES
CHECK WRITTEN BY: ☐ CLIENT ☐ FLSS
AMOUNT:
CHECK #:

COMMENTS:

| HEIGHT | WEIGHT | HAIR | EYES | AGE | SEX | RACE | ADDITIONAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| DATE SERVED | TIME SERVED | PROCESS SERVER | PERSON SERVED / TITLE |
|---|---|---|---|
| | | | |

LIABILITY FOR LOSS OR DAMAGE TO ITEMS LIMITED TO $250.00

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION
2010 DEC 21 A 9:54
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

Amelia A. McDermott (SBN 204997)
LAW OFFICES OF AMELIA A. McDERMOTT
4626 Albuquerque Street
San Diego, California 92109

Telephone: (858) 866-2600
Facsimile: (858) 866-2657

Attorneys for plaintiff SAM KHOLI ENTERPRISES, INC., a California Corporation

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

SAM KHOLI ENTERPRISES, INC., a California Corporation,

Plaintiff,

v.

TOM R. THOMPSON, individually and dba THOMPSON TRUCKING; JONES MOTOR COMPANY, INC. a Pennsylvania corporation qualified to transact intrastate business in the State of California; JONES MOTOR GROUP, INC., a subsidiary of JONES MOTOR COMPANY, INC.; and JONES EXPRESS, INC., a subsidiary of JONES MOTOR COMPANY, INC., and DOES 1 through 50, inclusive,

Defendants.

Case No. 37-2010-00106420-CU-FR-CTL

**COMPLAINT FOR:**

1) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**
2) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;**
3) **FRAUD IN THE INDUCEMENT;**
4) **INTENTIONAL MISREPRESENTATION;**
5) **FRAUD - FORGERY;**
6) **CIVIL CONSPIRACY; AND**
7) **DECLARATORY RELIEF**

**COMES NOW** plaintiff SAM KHOLI ENTERPRISES, INC., a California corporation, ("SKE") and alleges against defendants, TOM R. THOMPSON, individually and dba THOMPSON TRUCKING; JONES MOTOR COMPANY, INC. a Pennsylvania corporation qualified to transact intrastate business in the State of California; JONES MOTOR GROUP, INC., subsidiary of JONES MOTOR COMPANY, INC.; and JONES EXPRESS, INC., a subsidiary of JONES MOTOR COMPANY, INC., and DOES 1 through 50, inclusive (collectively "DEFENDANTS") as follows:

## PRELIMINARY ALLEGATIONS

1. SAM KHOLI ENTERPRISES, INC. ("SKE") is and was at all material times herein a California corporation residing and transacting business in and within the State of California with its principal place of business in San Diego, California.

2. SKE is informed and believes and thereon alleges that TOM R. THOMPSON, individually and dba THOMPSON TRUCKING ("THOMPSON") is and was at all material times herein an individual residing in the County of McLennan, State of Texas. SKE is further informed and believes that THOMPSON TRUCKING is a sole proprietorship doing business in the County of San Diego, State of California.

3. SKE is informed and believes and thereon alleges that JONES MOTOR COMPANY, INC., ("JMC") is a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that JMC is and was at all material times herein transacting business in the County of San Diego, State of California.

4. SKE is informed and believes and thereon alleges that JONES MOTOR GROUP, INC., ("JMG") is a Pennsylvania corporation and a subsidiary of JONES MOTOR COMPANY, INC., a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that JMG is and was at all material times herein transacting business in the County of San Diego, State of California.

5. SKE is informed and believes and thereon alleges that JONES EXPRESS, INC., ("EXPRESS") is a subsidiary of JONES MOTOR COMPANY, INC., a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that EXPRESS is and was at all material times herein transacting business in the County of San Diego, State of California.

6. SKE is ignorant of the true names and capacities, whether individual or otherwise, of defendants sued as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. SKE will amend this complaint to allege their true names and capacities when ascertained. SKE is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that SKE's injuries as herein alleged

were proximately caused by such defendants.

7. SKE is further informed and believes, and thereon alleges, that each of the defendants is, and at all material times was, the agent, servant, or employee of each of the remaining defendants, and was acting within the course and scope of said agency or employment with the approval, knowledge and/or consent of each of the remaining defendants.

**VENUE AND JURISDICTION**

8. Jurisdiction is proper in the State of California, in and for the County of San Diego, because all of the DEFENDANTS conduct business in the State of California, County of San Diego.

9. Venue is proper in the State of California, in and for the County of San Diego, because some of the acts of DEFENDANTS alleged herein occurred in San Diego, California.

**GENERAL ALLEGATIONS**

10. In 2007, SKE's President, Sam Kholi, contacted THOMPSON after seeing his advertisement seeking truck driver owner/operators in the State of California. When Mr. Kholi contacted THOMPSON, the woman who answered the telephone stated "Jones Motor Group". This initially confused Mr. Kholi as he thought he was calling THOMPSON. However, the woman who answered told him he had the right telephone number.

11. After multiple telephone conversations with THOMPSON, in the fall of 2007 Mr. Kholi traveled to Coryell County, Texas with the hope of purchasing THOMPSON TRUCKING, which THOMPSON had informed him had a well-established customer base that Mr. Kholi could service with SKE's existing inventory of tractors and trailers as well as any tractors and trailers purchased from the sale of THOMPSON TRUCKING.

12. When Mr. Kholi met with THOMPSON, he represented to Mr. Kholi that THOMPSON TRUCKING had an extensive customer list that would stay loyal and could be transferred as a legitimate asset to any buyer who purchased THOMPSON TRUCKING. THOMPSON further represented to Mr. Kholi that his key employees were bound by non-competition agreements and would remain with the company in order to continue to serve and maintain the relationships with the customers that THOMPSON had under ongoing contractual agreements.

///

13. As discussions progressed between THOMPSON and Mr. Kholi with regard to the sale of THOMPSON TRUCKING to SKE, THOMPSON traveled to San Diego, California to meet with Mr. Kholi. While in San Diego, California, THOMPSON continued to discuss the terms of the agreement with Mr. Kholi and he further inspected multiple real properties that were potentially to be used as collateral for the sale.

14. Prior to entering into any agreement with THOMPSON, on or about October 7, 2007, Mr. Kholi met with representatives of JMC. Unknown to Mr. Kholi at the time, THOMPSON and JMC's principal, Jim Koegel, among others, were in contact with each other to coordinate with regard to the representations made to Mr. Kholi as to THOMPSON's relationship with JMC and its subsidiaries. Specifically, THOMPSON and JMC both represented to Mr. Kholi that JMC and its subsidiaries provided various services to THOMPSON TRUCKING, including the following: (1) Computer software and hardware; (2) Non-recourse accounts receivable and cash flow; (3) Liability and Cargo Insurance; (4) Department of Transportation and Insurance compliance; (5) Non-recourse financing to owner/operators; and (6) Lender services.

15. Importantly, at the time THOMPSON, JMC, and its subsidiaries made representations to SKE with regard to THOMPSON's relationship with JMC, THOMPSON was subject to a legally binding written agreement with EXPRESS entitled "Consulting and Non-Compete Agreement" ("Consulting Agreement"). According to the express terms of the Consulting Agreement, THOMPSON agreed to devote his "full working time and attention to the service of JEX and to the affairs of JEX." Moreover, pursuant to the terms of the Consulting Agreement, "Thompson shall not, without the written consent of JEX, directly or indirectly render services to or for a person, association, or other business that competes with the interests of JEX."

16. At no time did THOMPSON, JMC, or any of its subsidiaries inform Mr. Kholi of the contents of the Consulting Agreement, that THOMPSON was exclusively bound to work for EXPRESS, or that THOMPSON was subject to a Non-Compete Agreement with EXPRESS. To the contrary, Mr. Kholi did not learn of the existence of the Consulting Agreement, or the agreements which it contained until at least late 2008 at the earliest.

///

17. Based upon the above representations made by both THOMPSON and JMC and its subsidiaries, among others, on October 12, 2007, Mr. Kholi and THOMPSON entered into a memorandum of understanding entitled "Agreement for the Purchase and Sale of Business" wherein THOMPSON agreed to sell SKE his business that included real estate valued at $150,000.00, trailers valued at $400,000.00, other equipment valued at $50,000.00, and goodwill valued at $3,030,000.00 (the "Agreement"). THOMPSON's valuation of the business' goodwill was based upon his long-term and ongoing customer and client relationships and key employees who maintained those relationships.

18. As part of the Agreement, THOMPSON agreed to sign a non-compete agreement with SKE and to work as SKE's employee for one year after the date of sale. In reality, however, THOMPSON could not agree to sign a non-compete agreement with SKE or to work for SKE as its employee for one year after the sale date because he was already bound by the terms of the Consulting Agreement he previously had entered into with EXPRESS.

19. Pursuant to the Agreement, on or about October 12, 2007, SKE paid THOMPSON an initial deposit of $646,666.66 and began making monthly installment payments of $16,666.00 per month towards the remaining outstanding balance of $2,983,333.34 as agreed. In turn, THOMPSON was obligated to transfer title to his real property located at 206 South 8th Street, Copperas Cove, Texas 76522 and title to 43 trailers as well as furniture, equipment, and other tangible assets to SKE. THOMPSON never transferred title to his real property to SKE, never transferred clean title to the 43 trailers to SKE, and ultimately blocked SKE's access to the furniture, equipment, and other tangible assets. In fact, Mr. Kholi later learned that THOMPSON did not even own or hold title to the 43 trailers when he entered into the Agreement. Instead, the 43 trailers were owned by EXPRESS.

20. In the weeks and months that followed, the terms of the sale were mutually changed several times; however, THOMPSON's customer list and relationships as well as his key employees who maintained those relationships remained the primary financial component of the sale.

21. Then in January of 2008, Mr. Kholi suspected that THOMPSON did not, in fact, have a well established customer base as he represented. Instead, Mr. Kholi began to believe that THOMPSON TRUCKING's business mostly relied upon third party brokers, and its most important client, known as Harbor Freight, a California corporation, was actually controlled by JMC.

22. When Mr. Kholi voiced his concerns to THOMPSON, JMC and its subsidiaries, and Harbor Freight, Mr. Kholi was assured that THOMPSON's top producing account – Harbor Freight – was his actual customer and would stay with the business after the sale. Based upon this assurance, Mr. Kholi paid another $600,000.00 on January 31, 2008 towards the outstanding balance owed on the purchase price.

23. Despite THOMPSON's representations that his key employees were bound by non-compete agreements, in about March of 2008 they left SKE and began to work for JMC. Specifically, SKE is informed and believes that without SKE's knowledge or consent, on or about March 6, 2008, two of SKE's key employees that were part of the sale of THOMPSON TRUCKING – Nora and Debbie – left SKE's office for a meeting with JMC which lasted approximately three hours. During this meeting, SKE is informed and believes that JMC induced Nora and Debbie, among other SKE employees, to breach their Non-Compete Agreements, leave SKE, and goto work for JMC. To this end, SKE is informed and believes that JMC showed Nora and Debbie a contract between EXPRESS and Harbor Freight. A representative of JMC also showed Debbie Department of Transportation Documents she had signed and threatened that she could goto jail because she was not "safety" certified.

24. Based upon the threats and inducement of JMC and its subsidiaries, on March 10, 2008, numerous key employees of SKE, including but not limited to Debbie, Nora, Leigh Ann, Karmen, Petra, and Bubba, did not show up for work. Instead, on the Saturday prior they went to SKE's offices and cleaned out their desks without SKE's knowledge or consent. On or about March 10, 2008, many of SKE's key employees then began working for JMC.

25. When SKE's employees left to work for JMC, they destroyed or removed business records vital to SKE's business interests and abandoned rolling truck deliveries operating at the time of departure. Specifically, SKE is informed and believes that JMC induced Nora to shred the Non-Compete Agreements that SKE's key employees had signed. Moreover, Mr. Kholi was unable to recover all of the trailers then operating, and has unpaid invoices pursuant to those loads that were delivered as promised by Mr. Kholi. Furthermore, THOMPSON locked SKE out of the computer systems regarding the rolling stock as well as employee records, to the detriment of SKE's normal business operations.

///

26. In addition, in March of 2008, Mr. Kholi finally confirmed that Harbor Freight was controlled by JMC and its subsidiaries, not THOMPSON as he and JMC had both represented.

27. As a result, Mr. Kholi paid $1,313,333.33 for THOMPSON TRUCKING and was left with nothing – no title to real property, no clean title to the trailers, no equipment, furniture, or other tangible assets, no key employees, and no well-established customer base.

**FIRST CAUSE OF ACTION**

**(INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)**

**(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

28. PLAINTIFF hereby realleges and incorporates herein by this reference, paragraphs 1 through 27, as though fully set forth herein.

29. On October 12, 2007, SKE purchased THOMPSON TRUCKING from THOMPSON. The purchase included a transfer of THOMPSON's key employees who he represented were under Non-Compete Agreements as well as transfer of THOMPSON TRUCKING's contracts with existing customers including, but not limited to, Harbor Freight.

30. Defendants JMC, JMG, EXPRESS, and DOES 1 through 10 had knowledge that SKE purchased THOMPSON TRUCKING from THOMPSON and the terms of that agreement. In fact, JMC, JMG, EXPRESS, and DOES 1 through 10 were directly involved in SKE's purchase of THOMPSON TRUCKING. Nevetheless, JMC, JMG, EXPRESS, and DOES 1 through 10 interfered with the agreement and contract between SKE and THOMPSON TRUCKING as well as those between SKE and its various employees as well as with Harbor Freight, including but not limited to, the following:

- JMC, JMG, EXPRESS, and DOES 1 through 10 induced SKE's key employees to violate their Non-Compete Agreements, leave SKE's employment, and goto work for JMC and its subsidiaries;
- JMC, JMG, EXPRESS, and DOES 1 through 10 induced Harbor Freight to breach its contract with THOMPSON TRUCKING and SKE and instead to enter into an agreement with JMC and its subsidiaries; and

///

///

- JMC, JMG, EXPRESS, and DOES 1 through 10 induced THOMPSON to sell SKE 43 trailers on October 12, 2007 which he did not own, but instead were owned by EXPRESS.

31. As a result of JMC, JMG, EXPRESS, and DOES 1 through 10's intentional interference with SKE's contractual relationships with THOMPSON, key employees, and Harbor Freight, SKE could not operate the business it purchased from THOMPSON TRUCKING for $3,630,000.00. In addition, SKE lost income as well as the ability to keep his business solvent and income-earning. Thus, SKE has been damaged in an amount in excess of $25,000.00, the exact amount to be determined at the time of trial.

32. JMC, JMG, EXPRESS, and DOES 1 through 10 did the acts herein alleged maliciously, fraudulently and oppresively, amounting to despicable conduct, and in conscious disregard of SKE's rights. The acts alleged herein were known to JMC, JMG, EXPRESS, and DOES 1 through 10. SKE is thus entitled to recover punitive damages from JMC, JMG, EXPRESS, and DOES 1 through 10 in an amoun according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

**(INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**

**(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

33. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

34. On October 12, 2007, SKE purchased THOMPSON TRUCKING from THOMPSON. THOMPSON agreed to sell SKE his business that included real estate valued at $150,000.00, trailers valued at $400,000.00, other equipment valued at $50,000.00, and goodwill valued at $3,030,000.00 (the "Agreement"). The purchase included a transfer of THOMPSON's key employees who he represented were under Non-Compete Agreements as well as transfer of THOMPSON TRUCKING's contracts with existing customers including, but not limited to, Harbor Freight.

35. JMC, JMG, EXPRESS, and DOES 1 through 10 knew an economic relationship existed between SKE and THOMPSON, SKE and its key employees, and SKE and Harbor Freight. JMC, JMG, EXPRESS, and DOES 1 through 10 knew that this economic relationship included the probability of

future economic benefit for SKE.

36. JMC, JMG, EXPRESS, and DOES 1 through 10 intentionally interfered with these economic relationships. To this end, JMC, JMG, EXPRESS, and DOES 1 through 10 interfered with the economic relationship between SKE and THOMPSON, key employees, and Harbor Freight as follows:

- JMC, JMG, EXPRESS, and DOES 1 through 10 induced SKE's key employees to violate their Non-Compete Agreements, leave SKE's employment, and goto work for JMC and its subsidiaries;
- JMC, JMG, EXPRESS, and DOES 1 through 10 induced Harbor Freight to breach its contract with THOMPSON TRUCKING and SKE and instead to enter into an agreement with JMC and its subsidiaries; and
- JMC, JMG, EXPRESS, and DOES 1 through 10 induced THOMPSON to sell SKE 43 trailers on October 12, 2007 which he did not own, but instead were owned by EXPRESS.

37. As a result of JMC, JMG, EXPRESS, and DOES 1 through 10's intentional interference with SKE's prospective economic advantage, SKE could not operate the business it purchased from THOMPSON TRUCKING for $3,630,000.00. In addition, SKE lost income as well as the ability to keep his business solvent and income-earning. Thus, SKE has been damaged in an amount in excess of $25,000.00, the exact amount to be determined at the time of trial.

38. The aforementioned acts of JAMC, JMG, EXPRESS, and DOES 1 through 10 were willful, malicious, despicable, cruel, wicked and fraudulent and entitle SKE to punitive or exemplary damages, the exact amount to be determined at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**(FRAUD IN THE INDUCEMENT)**

**(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

39. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

///

40. Beginning in or about September of 2007 and continuing thereafter until March of 2008, through their employees, agents, and/or representatives, JMC, JMG, EXPRESS, and DOES 1 through 10 falsely and fraudulently and with the malicious intent to defraud and deceive SKE and induce SKE to enter into an agreement to purchase THOMPSON TRUCKING made the oral representations to Mr. Kholi as set forth above including but not limited to the following:

- JMC, JMG, EXPRESS, and DOES 1 through 10 failed to disclose that THOMPSON was legally bound by the terms of the Consulting Agreement, that THOMPSON was exclusively bound to work for JMC and its subsidiaries, and that THOMPSON was subject to a Non-Compete agreement. Instead, JMC, JMG, EXPRESS, and DOES 1 through 10 represented to Mr. Kholi that THOMPSON was legally able to enter into an agreement to sell THOMPSON TRUCKING to SKE, which included a clause that required THOMPSON to sign a Non-Compete Agreement with SKE and to work for SKE for one year from the date of purchase; and
- JMC, JMG, EXPRESS, and DOES 1 through 10 represented to Mr. Khoi that Harbor Freight was not a customer of JMC, JMG, or EXPRESS, but instead was a customer of THOMPSON.

41. Through their employees, agents and/or representatives, JMC, JMG, EXPRESS, and DOES 1 through 10's representations were false and then known by JMC, JMG, EXPRESS, and DOES 1 through 10 in that JMC, JMG, EXPRESS, and DOES 1 through 10 despicably knew that THOMPSON was not legally able to enter into the Agreement for the purchase of THOMPSON TRUCKING because THOMPSON was legally bound to exclusively work for EXPRESS and was subject to a Non-Compete Agreement with EXPRESS. Moreover, JMC, JMG, EXPRESS, and DOES 1 through 10 despicably knew that Harbor Freight was a customer of JMC and its subsidiaries, not of THOMPSON TRUCKING.

42. JMC, JMG, EXPRESS, and DOES 1 through 10 fraudulently induced SKE to enter into the Agreement with THOMPSON TRUCKING with the despicable intent of having all of THOMPSON's debts owed to it paid off with the monies paid by SKE and then with the despicable intent of thereafter taking over SKE's business by inducing key employees and customers to leave SKE for JMC and its subsidiaries, despicably not caring about SKE's interests and maliciously scheming to

increase JMC and its subsidiaries' own profits and wealth at SKE's expense. The intentional misrepresentations and fraudulent non-disclosures made by employees and/or agents of JMC, JMG, EXPRESS, and DOES 1 through 10 caused SKE damage in that SKE was induced into purchasing THOMPSON TRUCKING for $3,630,000.00, a business SKE ultimately lost because of JMC, JMG, EXPRESS, and DOES 1 through 10's despicable conduct.

43. The representations made by agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10 were made with the intent to defraud SKE, and were made for the purpose of inducing SKE to rely upon them.

44. SKE was unaware of the true facts but instead acted in justifiable reliance upon the representations made by JMC, JMG, EXPRESS, and DOES 1 through 10 because they were corporations in good standing the agents and/or employees of whom had given Mr. Kholi no indication that they would make intentional misrepresentations to induce him into entering into the Agreement with THOMPSON.

45. At the time the misrepresentations were made and at the time SKE took the actions herein alleged, SKE was ignorant of JMC, JMG, EXPRESS, and DOES 1 through 10's secret intention to induce SKE into the Agreement to have THOMPSON's debt owed to it paid off and then to thereafter take the business away from SKE. If SKE had known of the actual intentions of JMC, JMG, EXPRESS, and DOES 1 through 10, it would not have entered into the Agreement with THOMPSON in reasonable reliance thereon.

46. SKE reasonably believed and relied on said representations made by JMC, JMG, EXPRESS, and DOES 1 through 10 because he had no reason to doubt their accuracy, and in reliance upon said representations, SKE was induced to take the actions detailed herein.

47. As a direct and proximate result of JMC, JMG, EXPRESS, and DOES 1 through 10's fraud and deceit and the facts herein alleged, SKE has been damaged in an amount in excess of $3,630,000.00, the exact amount to be proven at the time of trial.

48. As shown in the facts pleaded, JMC, JMG, EXPRESS, and DOES 1 through 10's conduct described in this Complaint, all of which is incorprated herein by this reference, was intended by JMC, JMG, EXPRESS, and DOES 1 through 10 to cause injury to SKE or was despicable conduct carried on

by JMC, JMG, EXPRESS, and DOES 1 through 10 with a cruel and unjust hardshp in conscious disregard of SKE's rights, and was conducted with the intention to deprive SKE of property, legal rights or otherwise cause injury, such as to constitute malice under California Code of Civil Code section 3294. JMC, JMG, EXPRESS, and DOES 1 through 10's acts were done knowingly, willfully, and with mailicious intent, with a conscious disregard of the rights of others conduct that subjected SKE to cruel and unjust hardship in conscious disregard of SKE's rights, such that SKE is entitled to punitive dmages in an amount appropriate to punish or set an example of JMC, JMG, EXPRESS, and DOES 1 through 10, in an amount to be determined by proof at trial.

**FOURTH CAUSE OF ACTION**

**(INTENTIONAL MISREPRESENTATION)**

**(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

49. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

50. Prior to SKE entering into the Agreement with THOMPSON and from October 12, 2007 until March of 2008, through their agents and/or employees, JMC, JMG, EXPRESS, and DOES 1 through 10 represented, among other things, that THOMPSON was not exclusively legally bound to JMC, JMG, EXPRESS, and DOES 1 through 10 and was not subject to a Non-Compete Agreement with them. Moreover, prior to SKE entering into the Agreement with THOMPSON and then on one more than one occasion between October 12, 2007 to March, 2008, agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10 expressly told Mr. Kholi that Harbor Freight was a customer of THOMPSON TRUCKING, not JMC or any of its subsidiaries.

51. The representations that agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10 made were false. The true facts were that THOMPSON was legally bound by the terms of the Consulting Agreement, including but not limited to, that THOMPSON was to exclusively work for EXPRESS and that THOMPSON was bound by a Non-Compete Agreement. Moreover, the true facts were that Harbor Freight was at all times a customer of JMC and its subsidiaries. Agents and/or employees of JMC and its subsidiaries made these representations to induce SKE into entering into the Agreement to purchase THOMPSON TRUCKING because all of THOMPSON's debts owed to JMC

and its subsidaries were to be paid in full by the proceeds from the sale. JMC, JMG, EXPRESS, and DOES 1 through 10 knew that SKE would not enter into the Agreement if he did not receive said representations from the agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10.

52. When the agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10 made these representations, they knew, or should have known them to be false, but agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10 made these representations with the intent to induce SKE into entering the aforementioned Agreement and paying money in furtherance thereof.

53. SKE, at the time these representations were made by agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10, and at the time SKE entered into the Agreement and paid money thereunder, was ignorant of the falsity of JMC, JMG, EXPRESS, and DOES 1 through 10's agents and/or employees' representations and believed them to be true.

54. SKE's reliance on JMC, JMG, EXPRESS, and DOES 1 through 10's representations was reasonable, because there was nothing in SKE's dealings with the DEFENDANTS, and each of them, during the negotiation of the Agreement which indicated that DEFENDANTS were misrepresenting any material facts. SKE relied upon JMC, JMG, EXPRESS, and DOES 1 through 10's representations because they represented themselves as knowledgeable and honest business people.

55. As a result of the intentional misrepresentations by JMC, JMG, EXPRESS, and DOES 2 through 10, SKE has suffered injuries in an amount greater than twenty-five thousand dollars, the exact amount to be proven at trial.

56. The aforementioned acts of JMC, JMG, EXPRESS, and DOES 1 through 10 were wilful, wanton, and malicious. JMC, JMG, EXPRESS, and DOES 1 through 10 are therefore responsible to SKE for punitive and exemplary damages in an amount to be plead separately.

**<u>FIFTH CAUSE OF ACTION</u>**

**(FRAUD - FORGERY)**

**(Alleged Against All DEFENDANTS)**

57. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

///

**Title to 43 Trailers**

58. On October 12, 2007, SKE entered into the Agreement. A term of the Agreement was that THOMPSON would sell SKE 43 trailers that THOMPSON represented that he owned for $400,000.00. SKE later learned that on October 12, 2007, THOMPSON did not own the 43 trailers. Instead, on October 12, 2007, title to the 43 trailers was held by EXPRESS.

59. Despite this, DEFENDANTS, and each of them, represented to SKE and Mr. Kholi that THOMPSON owned the 43 trailers in question. As a result, SKE paid THOMPSON $400,000.00 for 43 trailers on October 12, 2007, which THOMPSON did not own.

60. Thereafter, in or about March of 2008, by means of forged, false and fraudulent means, EXPRESS attempted to transfer title to the 43 trailers to THOMPSON, who in turn attempted to transfer title to SKE. In so doing, DEFENDANTS, and each of them, fraudulently represented the date on the transfers as October 12, 2007. However, in reality, the title to the 43 trailers was not attempted to be transferred until March of 2008.

61. Moreover, in attempting to transfer title to the 43 trailers to SKE, DEFENDANTS, and each of them, used false and fraudulent means to forge Mr. Kholi's name on the title's to each of the trailers. In reality, Mr. Kholi never signed any of the titles, and futher never did so on October 12, 2007 as represented on the titles.

62. The fact Mr. Kholi never signed any of the titles was not the only fraud employed by DEFENDANTS. Here, the titles themselves state that they must be signed in front of a notary or by an issuing agent who is licensed as a vehicle dealer by the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons, or its employee. Here, none of the 43 titles were signed before a notary. Moreover, SKE is informed and believes that none of the titles were signed by an issuing agent as required under Pennsylvania law. Despite this, DEFENDANTS, and each of them, have attempted to fraudulently hold the 43 titles – none of which were signed by Mr. Kholi – out as transferring title to the 43 trailers to SKE.

63. By these fraudulent and unlawful means, DEFENDANTS, and each of them, misappropriated from SKE and converted to their personal use and possession $400,000.00 for allegedly the purchase of the 43 trailers, clean title to which has never been produced.

64. By virtue of the wrongful acts of DEFENDANTS, and each of them, SKE is informed and believes and thereon alleges that DEFENDANTS, and each of them, fraudulently converted $400,000.00, the exact amount to be proven at the time of trial.

65. The aforementioned conduct of DEFENDANTS, and each of them, was an intentional deceit and concealment of a material fact known to them with the intention on the part of DEFENDANTS, and each of them, to deprive SKE of property or legal rights or otherwise causing injury, and was despicable conduct that subjected SKE to cruel and unjust hardship in conscious disregard of SKE's rights, so as to justify an award of exemplary and punitive damages.

**SIXTH CAUSE OF ACTION**

**(CIVIL CONSPIRACY)**

**(Alleged Against All DEFENDANTS)**

66. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

67. DEFENDANTS, and each of them, in taking the actions as more fully set forth herein above, entered into a common plan, scheme, and conspiracy to induce SKE to enter into the Agreement to purchase THOMPSON TRUCKING through intentional misrepresentations and non-disclosures and to further interfere with SKE's rights in an attempt to gain control over SKE's business, among other things.

68. More specifically, SKE is informed and believes, and thereon alleges, that DEFENDANTS entered into a common plan, scheme, and conspiracy to induce SKE to enter into the Agreement to purchase THOMPSON TRUCKING and pay THOMPSON in excess of $3,000,000.00 so that THOMPSON could pay off his outstanding debt owed to JMC, JMG, and EXPRESS and then JMC, JMG, and EXPRESS could take over SKE's business. Further, DEFENDANTS actually set out to disrupt SKE's business not only by making intentional misrepresentations and non-disclosures, but by causing SKE to lose its key employees and contract with Harbor Freight.

69. As a direct and proximate result of the conduct of DEFENDANTS, and each of them, SKE has suffered substantial compensable losses, including but not limited to the loss of the business purchased from THOMPSON for $3,630,000.00, the exact nature and extent of which are not yet fully

ascertained, proof of which will be offered at the time of trial.

70. The aforementioned acts of DEFENDANTS, and each of them, were intended to injure SKE, and were in conscious disregard to the rights of SKE, and were undertaken with the knowledge of probable injury to SKE's interests, and were therefore willful, oppressive, and wanton, and undertaken with malice, and constitute despicable conduct. Therefore, SKE is entitled to punitive and exemplary damages, according to proof at the time of trial.

**SEVENTH CAUSE OF ACTION**

**(DECLARATORY RELIEF)**

**(Alleged Against All DEFENDANTS)**

71. SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32, inclusive, as though fully set forth herein.

72. An actual controversy presently exists between SKE and DEFENDANTS, and each of them, as to whether DEFENDANTS, and each of them, transferred SKE clean title to the 43 trailers. To this end, SKE contends as alleged above that title to the 43 trailers was not properly transferred to him in compliance with the requirements of the State of Pennsylvania but instead were transferred unlawfully and with the use of forged signatures purporting to be that of Mr. Kholi.

73. SKE desires a judicial determination of whether DEFENDANTS, and each of them, transferred clean title to the 43 trailers to him. Otherwise, SKE will not have clean title to the 43 trailers and will not be able to transfer title to other purchasers as it sees fit.

74. A judicial determination is necessary and appropriate at the present time under all the circumstances so that SKE may ascertain its rights and duties as to ownership of the 43 trailers.

**PRAYER**

**WHEREFORE,** SAM KHOLI ENTERPRISES, INC. respectfully prays for judgment as follows:

**FIRST CAUSE OF ACTION (Intentional Interference with Contractual Relations)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For punitive and exemplary damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**<u>SECOND CAUSE OF ACTION</u> (Intentional Interference With Prospective Business Advantage)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For exemplary and punitive damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**<u>THIRD CAUSE OF ACTION</u> (Fraud in the Inducement)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For exemplary and punitive damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**<u>FOURTH CAUSE OF ACTION</u> (Intentional Misrepresentation)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For exemplary and punitive damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**<u>FIFTH CAUSE OF ACTION</u> (Fraud - Forgery)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For exemplary and punitive damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**<u>SIXTH CAUSE OF ACTION</u> (Civil Conspiracy)**

1. For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2. For costs of the suit herein incurred;

3. For exemplary and punitive damages in an amount to be determined at trial;

4. For such other and further relief as the court may deem proper.

**SEVENTH CAUSE OF ACTION (Declaratory Relief)**

1. That the Court determine the following:

- DEFENDANTS, and each of them, failed to transfer clean title to the 43 trailers to SKE which resulted in damage to SKE in an amount in excess of $400,000.00, the exact amount to be determined at trial; and
- DEFENDANTS, and each of them, are required to transfer clean title to the 43 trailers to SKE.

2. For costs of the suit herein incurred;

3. For such other and further relief as the court may deem proper.

Dated: December 20, 2010

LAW OFFICES OF AMELIA A. McDERMOTT

By: [signature]
Amelia A. McDermott, Attorneys for plaintiff, SAM KHOLI ENTERPRISES, INC.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Sam Kholi Enterprises, Inc., a California Corporation,

**DEFENDANTS**
Tom R. Thompson, Individually, and dba Thompson Trucking, et al.

**(b)** County of Residence of First Listed Plaintiff: San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Coryell County, TX
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
LAW OFFICES OF AMELIA A. McDERMOTT, 4626 Albuquerque St., San Diego, CA 92109 (858) 866-2600

Attorneys (If Known) **'11CV0177 W JMA**
Lurie, Zepeda, Schmalz & Hogan, 9107 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90210 (310) 274-8700

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28U.S.C. Sections 1332, 1441, 1446
Brief description of cause:
Intentional interference with K relations/prospective business advantage, fraud in the inducement, etc.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
**DEMAND $** 75,000.00 (at least)
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☑ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____ DOCKET NUMBER ____

DATE: 01/27/2010
SIGNATURE OF ATTORNEY OF RECORD: Payton Garofalo

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.